Judge Coalter:
As. to the twenty acres of land, which the appellant was about to have sold under his deed of trust, but was forbidden to do so by the appellees, who claimed it under their deed, I think the appellant properly came into a Court of *591 .Equity; as well for the purpose of settling the question, whether it was embraced by both deeds, as to have the other question, growing out of the sale by the trustee Taylor, also settled, in case it was embraced; and then the first question is, whether it is conveyed by the deed of trust to Clarke of the 14th of August, 1815.
I think it was not the intention of the parties to convey it; and, that if it was, the description given of it in the deed, in the first place, is not according to its locality, and is, moreover, too vague and uncertain to affect a subsequent incumbrancer, without notice that such was the intention of the deed; and the more especially, when every act of the parties, down to the time when the appellee forbade a sale of it by the trustee of the appellant, goes to shew that such was not the intention.
How are the facts as to this matter? In the first place, I do not understand the answers of either of the Bells to alledge, that they had their eye, at all, on this piece of land, or that they ever knew that it belonged to Imboden. It had only been conveyed to him by the executor of Hays, a few months before the 14th of August, 1815; and in fact, they might as well claim the part sold to Guthrie, as that was not conveyed until long after, though perhaps, sold before. But, unless they had notice of that, the legal title was in their trustee, and now is; as also the title to tho four acres sold in 1816, to Brown. The most they con - tend for is, that the twenty acres joined an alley of the town of Waynesborough, and, therefore, falls within the description of the deed. The defendant, James Bell, in his answer says, “the said twenty acres, as this respondent understands and believes,” (not that ho so understood it at the time of the conveyance,) “ was then parcel of a tract somewhat larger, which did actually join the town of Waynesborough. Since the making of that deed, this respondent understands and believes, that the said Imboden hath sold part of the said tract adjoining the town, so as to leave the said twenty acres, the residue- *592 separated a small distance from the town.” And in the preceding clause, he says, “ this respondent believes that the twenty acres of land, which the plaintiff alledges not to be within the deed, is distinctly embraced within it, and it was clearly the intention of the parties to embrace it;” that is, as I understand him, if this tract did join the four acres, which did join the town, it was clearly their intention to convey it by the deed; not that they had their eye upon it particularly, for if so, he could easily have stated that fact. Again; when he comes to take testimony in relation to its locality, and under the apprehension that it cannot be united to the four acres, he proves that it joins, on one whole side, the tract of 289 acres, purchased of Estil, which is conveyed in the deed, and that one whole side of the four acres also adjoins that tract, and as this large tract-joined the town, so also, it is contended, did these adjoining tracts. Now, if they were really intended to be conveyed, what better or more appropriate description could have been given .of them, than to specify the quantity, and call for them as adjoining that tract? Or, if the quantity was not known, or the person by whom conveyed, at least to call for them as adjoining that tract?
But in 1816, Imboden, at a public sale, sells the four acres to Brown, and Bell soon after gets possession of his bond on another transaction between him and Imboden. In addition to this, on the sale by the trustee Taylor, under the deed for the Richmond creditors, Bell’s whole claim is estimated as a prior lien on the other property clearly embraced in both of those deeds. If he had a further lien on other land, the Richmond creditors were entitled to throw him upon that, so far as it would go, in exoneration of the property they were selling. Other bidders went on the ground, that the property sold was chargeable with the whole of Bell’s debt. If he knew that he could resort to this land, he stood on better grounds than they did, and this concealment was a fraud on the Richmond creditors. But his claim of his entire debt, *593 as a charge on the property then selling, was not only a suppressio veri, but a suggestio falsi, as to them.
If it be said, that this was a fraud only on them, of which the appellant cannot avail himself, I answer, that he will not be permitted to suggest that he committed a fraud on any one. The truth is, he did not intend any such thing; and a claim to this land is entirely an after thought. The security was abundant, at that time, independent of this land. That sale proved it; for he gave $ 1200 more than the debts of both the Bells, and all the other prior liens; so that, in reality, there was no necessity to encumber it.
But do the twenty acres in fact, join the four acres, so as to be said to join the town ? This seems to me to be very uncertain from the survey. There had been a private alley, not one belonging to the town, dividing them, and which had been established by prior owners; so that, if they do join, it can only be at a point, where that alley comes to the line; and even that is to be eked out by a supposexl mistake of chain carriers, &c. so that I incline to think they do not join, even at that point. ■ If resort is had to the large tract, in order to join these twenty acres to the town, it only serves to shew, as before slated, that if that was the intention, it was a description negligently or designedly too vague to affect a subsequent incumbrancer. But in fact, that is also an after thought.
But what does the deed itself say? After describing the 289 acre tract, not only by quantity, bounding, &c. but the person from whom purchased, it proceeds to convey also, all the real estate held or in anywise belonging to the said Imboden and wife, in or adjoining the town of Waynesborough, together with the merchant mill, carding machine, distillery, dwelling house and barn, and the lots of land on which the said mill, &c. are severally situated; to have and to hold the said tract of land, mill, distillery, &c. and lots of land herein-before mentioned, to be hereby granted and intended to be conveyed, fyc. shewing *594 that the tract of 289 acres, and the lots of land on which the mill, houses, &c. were severally situated, were the objects of the deed.
All these circumstances convince me, that these twenty acres never were thought of at the time the deed was exe - cuted; and that even if they do join the four acres, as the party cannot now claim this land as a part of his trust fund, but by charging himself with a fraud on the Richmond creditors, he shall not be permitted to do so. If any person has a right to charge these lands against the appellant, it appears to me it is the Richmond creditors.
On this, and without having fully made up my opinion on the other ground taken in the bill, in relation to this land, I am of opinion to reverse the decree, and perpetuate the injunction.
As to the other matters, the bill ought to be dismissed, but without prejudice to any suit at law which the appellant may be advised to institute, as to any other subject conveyed to his trustee.
The President,
delivered the opinion of the Court;
The questions raised as to the waggon and teams, the stills and carding machines, more properly belong to a Court of Law than to a Court of Equity. As to the waggon and teams, whether they were embraced in the deed to Poage, and Bell responsible for their value, were questions proper to be determined in an action at law, by Poage’s trustee against Bell.
As to the carding machines and stills, if the3r were a part of the freehold, Bell purchased them under the sale by Taylor, and is entitled to them. If they were not a part of the freehold, he acquired no title to them by his purchase; and this question was also proper for the decision of a Court of Law, in an action by Poage’s trustee against Bell. As to all these subjects,, the remedy at law *595 was clear, adequate and unembarrassed, and a Court of Equity can entertain no jurisdiction of them.
As to the land in controversy, whether it was included in the deed for the benefit of the Bells or not, was also a proper question for a Court of Law; yet the plaintiff has an equity as to this subject. He avers, that if it is included in the deed for the benefit of the Bells, they have no lien on it, since their debt was wholly extinguished by Bell’s purchase from Taylor, the trustee of Ellis ¿y Allan; and the legal title, standing in the way of his remedy at law, ought to ho removed by a Court of Equity.
As to the question, whether Bell’s purchase from Taylor was an extinguishment of his debt; if that depended on the precise words used by Taylor, in announcing the terms of the sale, there would be some doubt. The witnesses differ in their representations of his expressions; some saying that he exhibited a statement of the amount of all prior incumbrances on the land, including the whole of Bell’s debt, amounting in all to upwards of $23,000, and declared that the purchaser was to pay tho. amount of these liens, and that the sum he bid was to be paid to the Richmond creditors. Others state that he said, after exhibiting the statement of prior incumbrances, that the property was sold subject to those incumbrances. But circumstances occurred, which shew that in whatever terms the sale was announced, it was the clear understanding of all parties, that the biddings were to be made upon the supposition, that the whole of tho prior incumbrances were to be charged upon the property in the hands of the purchaser. Bell himself and his trustee, made a statement of the amount of Bell’s incumbrance, and during the biddings, told Taylor that he had estimated their lien at about $ 500 too much; when Taylor observed, that it made no odds, as the purchaser took the property, subject to all the incumbrances, no matter what was their amount. Again: Ellis Sy Allan had (in order to give effect to an injunction, which they had obtained, to prevent Bell’s trustee from selling, as he *596 had advertised, on the day that Taylor sold) paid to Bell $ 7000, on account of his lien. This $ 7000 was not credited, either in the statement made by Taylor or Bell, of the amount of Bell’s lien on the land, and after the sale, was re-paid by Bell to Ellis <§• Mian, together with the $ 13,000, the amount of his bid. These circumstances prove incontestably, that it was understood by the parties, that the sum bid was over and above the whole amount of the liens; and that the purchaser was to take the property, not subject to the legal effect of the liens upon it and other property, but subject to the whole amount-thereof. If not, why was a statement of the whole amount, without crediting the $ 7000, exhibited as a guide to the purchaser ? Why did Bell correct the statement; and especially, why did he re-pay the $ 7000, if the terms really were, that the purchaser was to take the property, subject only to the legal operation of the liens? He was not bound to re-pay the $7000, since that sum was not then a lien on the land. On the contrary, if the purchaser was to take the property, subject to the payment of the aggregate of the liens, on the principles adopted in making the statement, (that is, subject to the correction of errors of calculation) then he was bound to return the $ 7000, as that sum had made no part of the estimate. These facts ascertain the real understanding of the parties, no matter what were the expressions used. Both expressions testified to by the witnesses, were probably used under the impression, that they were equivalent to each other, as they certainly were, if no other property had been included in Bell’s deed, than the property included in the deed under which the sale was made, and there is strong ground to believe, that at the time of the sale, none of the parties, especially Taylor, and Ellis 8? Mian, knew or believed that any property was conveyed by Bell’s deed, which was not embraced in their own; otherwise, some estimate would have been made of the portion of Bell’s debt, that was to remain a lien on that property.
*597 In another point of view, this transaction necessarily extinguished Bell’s debt in toto. Bell purchased nothing but Imboden’s equity of redemption, subject to all the incumbrances except Ellis $f Allan’s. This was all that the trustee was authorised by the deed to sell. He did not sell, nor did Bell purchase, the rights of Ellis fy Allan. The $ 12,000 did not pay the full amount of their debt; and after crediting the proceeds of Imboden’s interest in the property, he remains a debtor to them, and not to Bell, and they have a personal demand against Imboden for that balance. The transaction has the same effect precisely, as if Imboden himself (as ho did through his trustee Taylor) had sold his interest to Bell, subject to all prior liens, and had paid the money received from Bell, to Ellis Sf Allan. In that case, it could not be pretended that Bell could resort to any other property of Imboden, for the payment of any part of his debt; for if he could, for the same reason he would be entitled, and now is entitled, to claim the whole amount of his debt personally against Imboden. The whole is extinguished, or no part of it. The suggestion in Bell’s answer,.that he is willing to submit to a re-sale of the property, is entitled to no weight. If there had been any fraud or mistake in the sale, this might be proper. There was none; and the Court is only called on to carry into effect, a fair and unobjectionable contract, which, if injurious to Ellis fy Allan, they alone have a right to complain. Bell does not stand in their shoes, or succeed to their rights.
The decroo is, therefore, to be reversed, and Samuel Clarke, the trustee in Bell’s deed, and also in Poage’s deed, to be decreed to hold the legal title to the property in question, subject to the trusts in the latter deed. The bill should be dismissed as to other matters, and each party pay his own costs.